UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/13/2026

BENJAMIN G. CUTLER,

Plaintiff,

-against-

HANSA TECHNOLOGY COMPANY INC.,

Defendant.

25 Civ. 5223 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Benjamin Cutler, a former engineer at Hansa Technology Company, Inc. ("Hansa"), alleges that Hansa fired him in violation of the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila Code. § 9-1101 *et seq.* *See generally* Am. Compl., ECF No. 15.[1] Hansa moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot., ECF No. 21; *see also* Mem., ECF No. 22.; Opp., ECF No. 26; Reply, ECF No. 27. For the reasons stated below, the motion is granted.

**BACKGROUND**[2]

On May 17, 2023, Hansa hired Cutler as a staff engineer. *See* Am. Compl. ¶ 8. For the several months he worked at Hansa, Cutler lived in and worked remotely from Philadelphia, Pennsylvania. *See id.* ¶¶ 3–5.

Cutler is a recovering alcoholic who has maintained his sobriety for eight years. *Id.* ¶ 9. His condition affects his concentration "due to ongoing recovery efforts" and requires that he "refrain from participating in activities centered around alcohol or drugs" and regularly attend

---

[1] The parties do not dispute that this action is between "citizens of different States," and the amount in controversy appears to exceed $75,000. *See* 28 U.S.C. § 1332(a)(1); Am. Compl. ¶¶ 5, 6.

[2] The well-pleaded facts in the amended complaint "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).

Alcoholics Anonymous meetings and therapy sessions. *Id.* ¶ 9. His condition did not, however, "interfere with his job performance." *Id.* ¶ 16; *see id.* ¶¶ 9, 23.

While employed, Cutler received positive feedback on multiple occasions concerning his work performance. For example, on August 11, 2023, Hansa's Chief Technology Officer ("CTO"), Edouard Asmar, "prais[ed] [Cutler's] ideas as 'smart'" on Slack, and on September 29, 2023, Asmar told Cutler, "I trust you." *Id.* ¶ 15. A Vice President of Engineering also praised Cutler during his employment, stating on October 26 that Cutler was a "smart fucking dude." *Id.* After Cutler recommended a candidate to Hansa, this Vice President sent Cutler a Slack message, stating that the candidate was "cool" and that he "really like[d] him." *Id*.

On September 26, 2023, Cutler attended "a company outing at TopGolf," where certain unnamed Hansa employees offered Cutler beer and drugs, but Cutler declined. *Id.* ¶ 11. He disclosed his sobriety to these employees, who responded dismissively, stating "that's lame." *Id.*

Cutler alleges that after this event, Hansa's CEO and CTO Asmar's demeanor "changed significantly." *Id.* ¶ 12. He also states that certain unnamed Hansa employees "excluded [him] from key company meetings that he should have attended" and that the candidate he referred to Hansa was "rejected shortly after [his] disclosure." *Id.* ¶ 13. He further claims that Hansa ignored his complaints about being excluded from meetings—but he does not elaborate on this alleged exclusion, nor does he specify to whom he complained. *See id.*

On November 8, 2023, Hansa fired Cutler via video call. *Id.* ¶ 16. A Hansa representative stated that Cutler was "no longer a fit in our company culture." *Id.* The representative cited at least five incidents that, in Hansa's view, justified Cutler's discharge. *See id.* ¶ 17. These incidents include Cutler's response to an employee's disclosure of sexual abuse in July, his response to a requested change to his work product on October 11, his reaction to a

co-worker's message on October 14, his disagreement with Hansa's hiring decision and treatment of his referred candidate on October 17, and his purported use of a derogatory term when working with another employee on October 18. *See id.* None of the incidents relate to or reference the TopGolf social event. *See id.* Cutler argues that Hansa's stated reasons are pretextual because there had been "no prior discussion of the alleged incidents." *Id.* ¶¶ 16, 18.

**DISCUSSION**

I. Legal Standard

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. When adjudicating a motion to dismiss, the Court must draw all reasonable inferences in the non-movant's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

II. Analysis

Cutler brings disability discrimination and retaliation claims under the PHRA and PFPO. Courts in Pennsylvania interpret such claims, as well as claims under the comparable federal statute, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, coextensively.

*See, e.g.*, *Wolf v. Temple Univ.*, No. 21 Civ. 866, 2022 WL 1084743, at *3 (E.D. Pa. Apr. 11, 2022); *Anthony v. DAS Companies, Inc.,* No. 23 Civ. 2041, 2025 WL 3539188, at *3 n.3 (M.D. Pa. Dec. 10, 2025) (citing *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 n.21 (3d Cir. 2024) and *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)).

A. Discrimination Claim

Cutler has not plausibly alleged a disability discrimination claim. A plaintiff presents a *prima facie* case of disability discrimination by demonstrating: "(1) he is a disabled person within the meaning of the [relevant statutes]; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment action as a result of the discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

First, Cutler has not adequately alleged that he suffers from a disability within the meaning of the relevant statutes. Courts in the Third Circuit have held that "alcoholism is not a per se disability" and that, accordingly, a plaintiff must adequately allege that his condition "rises to the level of substantially limiting a major life activity" to prevail on a disability discrimination claim. *Szczesny v. Gen. Elec. Co.*, 66 F. App'x 388, 393 (3d Cir. 2003); *see Hollinger v. Reading Health Sys.*, No. 15 Civ. 5249, 2016 WL 3762987, at *10 n.7 (E.D. Pa. July 14, 2016); *Strausser v. Gertrude Hawk Chocolate, Inc.,* No. 15 Civ. 2458, 2018 WL 1470796, at *3–4 (M.D. Pa. Mar. 26, 2018).

Indeed, "disability" is defined under the ADA as a "(A) a physical or mental impairment that substantially limits one or more major life activities . . .; (B) a record of such an impairment;

or (C) being regarded as having such an impairment."[3] 42 U.S.C. § 12102(1)–(2); *see also* 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."). Under the ADA's implementing regulations, major life activities include, but are not limited to, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i).

Cutler must, therefore, plead "the nature of the alleged impairment at the time of his termination" and the "degree of limitation caused by the impairment." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012). Cutler claims that his condition as a recovering alcoholic affects his concentration, Am. Compl. ¶ 9, but he pleads no facts explaining how and to what extent he is limited and, notably, states that his condition did not "substantially interfere with his ability to perform his job duties" as an engineer, *id.*; *see also id.* ¶¶ 16, 23. He also alleges that because of his condition, he must refrain from certain social settings and attend, at an unspecified frequency, Alcoholics Anonymous meetings and therapy with a psychiatrist. *See* Am. Compl. ¶ 9. But these allegations fall short of showing that his impairment "substantially limits" the performance of a "major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Therefore, Cutler has not adequately pleaded that he is disabled within the meaning of the ADA, PHRA, or PFPO.

Second, even assuming Cutler suffers from a disability, his complaint fails to raise an inference of discrimination. Cutler relies on the alleged temporal proximity between his

---

[3] Cutler relies on the first definition of "disability" under 42 U.S.C. § 12102(2); he does not claim that Hansa relied on any "record" of his disability or that Hansa "regarded" him as having a disability. *See* Am. Compl. ¶¶ 9, 21.

disclosure of his sobriety and his termination. However, Cutler does not state that the employees who offered him alcohol and drugs at the work event worked with him, were his superiors, spoke to his superiors, or played any role in Hansa's employment decision. *See generally* Am Compl. Nor has Cutler alleged that those who fired him or were involved in his discharge knew of his sobriety or that he declined a drink at a work event. *See id.* ¶ 11. "[A]n employer cannot fire someone because of a disability it knows nothing about." *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) (emphasis omitted); *see Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380–82 (3d Cir. 2002). Cutler's sobriety was never referenced on the November 8 termination call, which occurred about six weeks after the social event. *See id.* ¶¶ 16–17. And even after the social event, on September 29, CTO Asmar praised Cutler's work performance. *See id.* ¶ 15.

Moreover, Cutler concedes that a Hansa representative cited specific conduct leading to his termination—conduct that was unrelated to Cutler's alleged disability or his refusal to consume drugs or alcohol. *Id.* ¶ 17. Nearly all of the cited incidents occurred after the social event and his positive feedback from CTO Asmar. *See id.* These incidents include Cutler's purported insubordination, his disagreement with a hiring decision, and his alleged use of a derogatory term when working with another employee. *See id.* "Even if there were some temporal connection" between Culter disclosing his sobriety and his firing, "when a 'significant intervening event' separates an employee's [disclosure] from his discharge, that event severs any temporal link." *Resch v. Sugarhouse HSP Gaming, L.P.,* No. 21 Civ. 42, 2022 WL 4120280, at *5 (E.D. Pa. Sep. 9, 2022) (citation omitted). On the facts alleged in the complaint, Hansa's concerns regarding Cutler's behavior in October, *see id.* ¶ 17, severs any link between the September 26 social event and the November 8 termination. Cutler's assertion that Hansa's

stated reasons were pretextual is conclusory. *Id.* ¶ 18. He has, therefore, not raised an inference of discrimination.

B. Retaliation Claim

Cutler has also failed to plausibly allege a retaliation claim. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

First, Cutler has not alleged that he engaged in protected activity. "Protected activity must oppose an unlawful discriminatory practice, [that is], one based on a protected characteristic." *Sryfi v. Trs. of Univ. of Penn.*, No. 24 Civ. 567, 2025 WL 590337, at *7 (E.D. Pa. Feb. 24, 2025). Cutler alleges that he refused to consume drugs or alcohol at a work event. *See* Am. Compl. ¶ 11. Offering an employee alcohol at a work event is not an unlawful discriminatory practice, and declining to drink does not constitute opposition to any such practice.

Second, for the reasons stated above, Cutler has not sufficiently alleged that the relevant decisionmakers at Hansa were aware of Cutler's refusal to drink at the social event or were motivated by his refusal to drink when they fired him. Therefore, Cutler has failed to adequately allege a causal connection between any protected activity and an adverse action.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is GRANTED. Should Plaintiff wish to amend his complaint, by **August 3, 2026**, he shall file an amended complaint in accordance with Rule III(H) of the undersigned's Individual Practices in Civil Cases. Along

with his amended complaint, Plaintiff shall include a letter addressing how Plaintiff's amendments cure the deficiencies identified in the Court's order.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 21.

SO ORDERED.

Dated: July 13, 2026
New York, New York

ANALISA TORRES
United States District Judge